UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
FRANKLIN C. REAVES, <u>et al.</u>,        )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )   Civil Action No. 04-1837   (PLF)
                                    )
UNITED STATES DEPARTMENT OF         )
    JUSTICE, <u>et al.</u>,               )
                                    )
            Defendants.             )
_____ )


OPINION

      Plaintiffs in this case are 27 United States citizens residing in various counties within Senate District No. 30 in South Carolina.  Their claims arise from the decision of the South Carolina Democratic Party to void a June 8, 2004 primary election following an election contest, and to hold a special election on September 28, 2004.  The complaint asserts two claims under the Voting Rights Act of 1965, 42 U.S.C. § 1973 <u>et seq</u>., against defendants the Voting Section of the Civil Rights Division of the United States Department of Justice, Attorney General John Ashcroft, and Voting Section Chief Joseph D. Rich (the "federal defendants"); and against the State of South Carolina.[1]  Plaintiffs requested adjudication by a three-judge court, as authorized by Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, <u>see</u> Application for Three-Judge Court, and Chief Judge Ginsburg, at the request of the district judge to whom the case was

---

      [1]    The caption of the complaint actually names the "United States Attorney," but it is clear from the address given and the text of the complaint that plaintiffs intended to sue the Attorney General of the United States and not either the United States Attorney for the District of Columbia or the United States Attorney for the District of South Carolina.

initially assigned and pursuant to statute, appointed one Circuit judge and an additional judge of this Court to serve on the three-judge panel.  See 28 U.S.C. § 2284.

The federal defendants and the State of South Carolina have filed separate motions to dismiss.  For the reasons discussed below, the Court will grant the federal defendants' motion and deny South Carolina's motion.  It also will, *sua sponte*, transfer the case to the United States District Court for the District of South Carolina.

I.  BACKGROUND

On June 8, 2004, the South Carolina Democratic Party held primary elections in State Senate District No. 30.  Because of an election contest, the party invalidated the election on June 18, 2004.[2]  At the request of the state Democratic Party and the South Carolina State Election Commission, South Carolina Governor Mark Sanford on September 7, 2004 issued an executive order setting a special primary election for September 28, 2004.  See S.C. Exec. Order No. 2004-25 (Sep. 7, 2004); Complaint ¶ 48.  The next day, the State of South Carolina requested that the Attorney General of the United States conduct an expedited review of the executive order under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  See United States'

---

[2]   A more detailed description of the early stages of this controversy may be found in the September 3, 2004, order of the United States District Court for the District of South Carolina in Glover v. South Carolina Democratic Party, Civil No. 04-2171, granting summary judgment for defendants, which include the South Carolina Election Commission, Governor Mark Sanford, the South Carolina Democratic Party, and the respective election commissions of each of the counties in Senate District No. 30.  That case, now on appeal to the United States Court of Appeals for the Fourth Circuit, was brought by the Reverend Franklin Reaves, one of the plaintiffs in this case, and several other individuals.  Reverend Reaves is a named plaintiff in at least two other actions in the United States District Court for the District of South Carolina arising from the South Carolina Senate District 30 election.  See Reaves v. South Carolina Democratic Party, Civil No. 04-2047 (filed June 25, 2004); Reaves v. Sweeney, Civil No. 04-22206 (filed Sept. 13, 2004).

2

Memorandum in Support of Motion to Dismiss and in Response to Plaintiffs' Motion to Stay Election Results at 5 and Attachment 1. On September 17, 2004, the Chief of the Justice Department's Voting Section responded to the request on behalf of the Attorney General, informing South Carolina that the Attorney General would not interpose any objection to the proposed change to state election procedures. See id. at 5-6 and Attachment 2.

On October 22, 2004, plaintiffs, 27 African-American voters from South Carolina State Senate District No. 30, filed this action seeking to enjoin enforcement of the change to election procedures. See Compl. ¶¶ 54, 59. The same day, plaintiffs filed an application for a three-judge court as authorized by Section 5. After notification by District Judge Paul L. Friedman, to whom the case had originally been assigned, that the case seemed appropriate for the appointment of a three-judge court, Chief Judge Douglas H. Ginsburg of the United States Court of Appeals for the District of Columbia Circuit designated Circuit Judge A. Raymond Randolph and District Judge John D. Bates to serve on a three-judge panel with Judge Friedman. See Designation of Judges to Serve on Three-Judge District Court (Nov. 2, 2004). On November 3, 2004, plaintiffs filed a motion to stay the election results in Senate District No. 30.

The federal defendants have filed a motion to dismiss the complaint, asserting that, to the extent the complaint seeks review of the Attorney General's decision not to object to the proposed change in voting procedures, it fails to state a claim upon which relief may be granted, or, in the alternative, that this Court is without subject matter jurisdiction to consider it; that plaintiffs have failed to plead sufficient facts to confer standing; and that plaintiffs' claim that South Carolina failed to obtain preclearance of changes to polling places cannot be asserted against the federal defendants. See United States' Memorandum in Support of Motion to

Dismiss and in Response to Plaintiffs' Motion to Stay Election Results at 1-2. The State of South Carolina also filed a motion to dismiss plaintiffs' complaint, arguing that the state's Eleventh Amendment sovereign immunity bars suit in federal court. After review of the parties' filings, the Court will grant the United States' motion to dismiss and deny South Carolina's motion to dismiss. In the interests of justice, however, it will transfer the case to the United States District Court for the District of South Carolina.

## II.  DISCUSSION

*A. Section 5 of the Voting Rights Act*

Section 5 of the Voting Rights Act prohibits certain jurisdictions, South Carolina included, from implementing any change to state election practice or procedure without first obtaining a declaratory judgment that the change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color." 42 U.S.C. § 1973c. The United States District Court for the District of Columbia has exclusive jurisdiction over such actions, which are heard before a specially designated three-judge court. Id. As an alternative to seeking a declaratory judgment, the state may submit the proposed change to the Attorney General of the United States for "preclearance." If the Attorney General affirmatively indicates that he will raise no objection to the proposed change, or fails to raise an objection within 60 days, the state may enforce the change. 42 U.S.C. § 1973c. See also Lopez v. Montgomery County, 519 U.S. 9, 11-12 (1996); New York v. United States, 874 F. Supp. 394, 395-96 (D.D.C. 1994).

In addition to the declaratory judgment action explicitly authorized by the statute, the Supreme Court has recognized two causes of action implied by Section 5. First, the Attorney General of the United States may seek an injunction prohibiting the enforcement of a new voting regulation because of the enacting state's failure to obtain preclearance under Section 5. See Allen v. Bd. of Elections, 393 U.S. 544, 561 (1969). Second, a private citizen may seek a declaratory judgment that a new state enactment is governed by Section 5 and therefore is subject to preclearance requirements. See id. at 555 & n.19, 557; see also Lopez v. Montgomery County, 519 U.S. at 20. Such "coverage suits" by private citizens must be heard by three-judge courts, Allen v. Bd. of Elections, 393 U.S. at 563, but because they address only the question of whether a particular enactment is subject to the Voting Rights Act and not the "difficult substantive issue" of whether it has a discriminatory purpose or effect, the United States District Court for the District of Columbia does not have exclusive jurisdiction over such suits. Id. at 558-60; see also Perkins v. Matthews, 400 U.S. 379, 383-86 (1971).[3]

### B. Federal Defendants' Motion to Dismiss

The federal defendants have moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim. Because the Court finds that Count I of plaintiffs' complaint does not state any cognizable cause of action, and that Count II of the complaint establishes no "case or controversy" with respect to the federal defendants, the Court will grant the federal defendants' motion to dismiss those defendants from the case.

---

[3] Three-judge courts convened under the Voting Rights Act proceed in accordance with 28 U.S.C. § 2284, which sets forth general procedures for three-judge federal district courts. See 42 U.S.C. § 1973c.

1.  Count I

Count I of plaintiffs' complaint challenges the United States Attorney General's decision to grant preclearance to South Carolina's decision to nullify the June 8 primary election and schedule a special election for September 28, 2004.  Compl. ¶¶ 37, 48-49, 51-53.  Such a claim unquestionably is not cognizable under Section 5:  the Supreme Court has clearly held that Congress intended the Attorney General's decision whether or not to object to a proposed voting change under Section 5 to be discretionary and unreviewable.  See Morris v. Gressette, 432 U.S. 491, 504-07 & n.22 (1977); see also Harris v. Bell, 562 F.2d 772, 773-74 (D.C. Cir. 1977); City of Rome v. United States, 450 F.Supp. 378, 380-81 (D.D.C. 1978).  This is true even where, as here, the Department of Justice is alleged to have violated its own regulations governing the preclearance procedure.  See Harris v. Bell, 562 F.2d at 773-74.

Because a challenge to the Attorney General's refusal to object to a voting procedure change under Section 5 is foreclosed by previous and binding case law, plaintiffs have failed to state a claim under Section 5 of the Voting Rights Act, and the Court lacks subject matter jurisdiction.  See City of Rome v. United States, 450 F. Supp. at 380-81; see also Goosby v. Osser, 409 U.S. 512, 518 (1973);  LaRouche v. Fowler, 152 F.3d 974, 981-82 (D.C. Cir. 1998).  The Court therefore will dismiss Count I of the complaint.

2.  Count II

Count II of the complaint alleges that the State of South Carolina changed the location of certain polling places in the special election without obtaining the necessary preclearance under Section 5 of the Voting Rights Act.  Compl. ¶¶ 56-58.  A change in polling

places has been held to fall within the scope of Section 5, so that Count II is not obviously without merit.  See Perkins v. Matthews, 400 U.S. at 387.

Nonetheless, there is no subject matter jurisdiction over Count II with respect to the federal defendants.  The power of the federal courts under Article III of the Constitution extends only to actual "cases" or "controversies."  See, e.g., Allen v. Wright, 468 U.S. 737, 750-52 (1984); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).  For the federal courts to exercise jurisdiction, the plaintiff "must allege personal injury fairly traceable to *the defendant's* allegedly unlawful conduct and likely to be redressed by the requested relief."  Allen v. Wright, 468 U.S. at 751 (emphasis added).  In this case, it is not the allegedly unlawful conduct of the federal defendants but that of the State of South Carolina that allegedly caused injury to plaintiffs.  Under Section 5 of the Voting Rights Act it is the responsibility of the "state or subdivision" to obtain preclearance for any change to voting procedures.  42 U.S.C. § 1973c.  This Court could grant no relief *vis a vis* the federal defendants that would redress plaintiffs' alleged injury; therefore, no cognizable case or controversy exists with respect to those defendants.

Because Count II alleges no "case or controversy" between plaintiffs and the federal defendants, Count II must be dismissed with respect to these defendants for lack of subject matter jurisdiction.

### C.  Defendant South Carolina's Motion to Dismiss

The State of South Carolina raises only one argument in its motion to dismiss: that its Eleventh Amendment sovereign immunity bars this action.  This contention is without

merit. In <u>Nevada Department of Human Resources v. Hibbs</u>, 538 U.S. 721 (2003), the Supreme Court held that although the Constitution does not provide for federal jurisdiction over suits against nonconsenting states, Congress may abrogate such immunity in federal court "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power [to enforce the constitutional guarantee of due process] under § 5 of the Fourteenth Amendment." <u>Id</u>. at 726. Congress has "parallel power" to abrogate state sovereign immunity in enforcement of the Fifteenth Amendment as well. <u>City of Boerne v. Flores</u>, 521 U.S. 507, 518 (1997) (citing <u>South Carolina v. Katzenbach</u>, 383 U.S. 301, 308 (1966)).

Although the Supreme Court has never explicitly held that Section 5 of the Voting Rights Act abrogates state sovereign immunity, in the face of challenges by the states it has upheld Section 5 as a valid exercise of Congress' power to enforce the guarantees of the Fifteenth Amendment against infringement by the states. <u>See</u> <u>South Carolina v. Katzenbach</u>, 383 U.S. at 337; <u>see also</u> <u>Nevada Department of Human Resources v. Hibbs</u>, 538 U.S. at 737; <u>compare</u> <u>Bd. of Treasurers of the Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 373-74 (2000) (unfavorably comparing Americans with Disabilities Act, which was held not to abrogate state sovereign immunity, with Voting Rights Act, which had been found to be "'appropriate' legislation to enforce the Fifteenth Amendment's protection against racial discrimination in voting."). Moreover, the Supreme Court repeatedly has held that both states and their political subdivisions are subject to "coverage suits" implied under Section 5. <u>See</u> <u>Clark v. Roemer</u>, 500 U.S. 646, 652 (1991); <u>Connor v. Walker</u>, 421 U.S. 656 (1975); <u>Allen v. Bd. of Elections</u>, 393 U.S. at 564. The inescapable conclusion is that Congress, in passing the Voting Rights Act, effected a valid

abrogation of state sovereign immunity. See City of Boerne v. Flores, 521 U.S. at 518 ("We have also concluded that other measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments, despite the burdens those measures placed on the States.") (citing South Carolina v. Katzenbach, 383 U.S. at 308). Defendant South Carolina's assertion of sovereign immunity with respect to plaintiffs' claims under the Voting Rights Act therefore fails, and South Carolina's motion to dismiss must be denied.[4]

*D. Transfer of Venue*

Under the general federal change of venue statute, 28 U.S.C. § 1404, a court even though it has jurisdiction may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Court may consider the following factors in determining whether a case should be transferred under Section 1404(a):

> [t]he convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory process to compel the attendance of unwilling witnesses; the amount of expense for willing witnesses; the relative congestion of the calendars of potential transferee and transferor courts; and other practical aspect [sic] of expeditiously and conveniently conducting a trial.

Chung v. Chrysler Corp., 903 F. Supp. 160, 163-64 (D.D.C. 1995) (quoting Armco Steel Co., L.P. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991)).

---

[4] In any event, even if Congress had not validly abrogated state sovereign immunity with the Voting Rights Act, to the extent plaintiffs seek not retrospective relief but an injunction forcing state officials to comply with federal law, their claims might proceed under the doctrine set forth by the Supreme Court in Ex Parte Young, 209 U.S. 123, 154 (1908). See also Green v. Mansour, 474 U.S. 64, 68 (1985) ("[T]the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law.").

There is no question that this case could have been brought in the District of South Carolina. In federal question cases, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). That is the case here, because both the initial primary election and the disputed special election were held in South Carolina, and the decision to change state election procedures was made there.[5]

As for convenience, all the individuals and entities now parties to the case reside in the State of South Carolina (itself the only remaining defendant), and the events giving rise to plaintiffs' claims occurred there as well. Thus, any witnesses or evidence necessary to the just adjudication of plaintiffs' claims are far more likely to be located in South Carolina than in the District of Columbia. Furthermore, a number of the named plaintiffs in this case have in fact filed nearly identical claims against the remaining defendant, the State of South Carolina, in the United States District Court for the District of South Carolina. See Reaves v. South Carolina Democratic Party, Civil No. 04-2047 (D.S.C. filed June 25, 2004); Glover v. South Carolina Democratic Party, Civil No. 04-2171 (D.S.C. filed June 29, 2004); Reaves v. Sweeney, Civil No. 04-22206 (D.S.C. filed Sept. 13, 2004). It would be inefficient and unjust to allow this parallel litigation, involving nearly identical parties and claims, to continue in the District of Columbia, rather than to transfer the case to the District of South Carolina.

---

[5] Neither is the United States District Court for the District of South Carolina's jurisdiction to hear this case in question, as the Supreme Court has made clear that the United States District Court for the District of Columbia does *not* have exclusive jurisdiction over "coverage suits" brought under Section 5 of the Voting Rights Act, and that such actions may be brought in the United States district court for the district where the relevant events took place. See Allen v. Bd. of Elections, 393 U.S. at 558-60.

*E.  Motion to Amend Complaint*

Plaintiffs also have moved to amend their complaint, apparently to join the South Carolina Democratic Party as a defendant.  <u>See</u> Plaintiffs' Memorandum in Support of Plaintiffs' Amended Motion in Opposition to Defendants' Motion to Dismiss and in Response to Motion to Stay Election Results at 6.  Plaintiffs cite as authority Rules 10(c) and 15 of the Federal Rules of Civil Procedure and Local Rules 10.03 and 15.01.  Although the Court recognizes the Federal Rules of Civil Procedure, there are no Rules 10.03 or 15.01 of the Local Civil Rules of this Court.  Plaintiffs presumably have filed this motion, as they have others, in accordance with the Local Civil Rules of the United States District Court for the District of South Carolina.  Moreover, plaintiffs have filed a motion but have not actually filed an amended complaint, as required by Civil Rule 15.1 of this Court.  Accordingly, the motion to amend will be denied without prejudice to its being re-filed after transfer.

III.  CONCLUSION

Because Count I of plaintiffs' complaint is wholly insubstantial, and because Count II asserts no actual case or controversy with respect to the federal defendants, plaintiffs' claims against those defendants will be dismissed for lack of subject matter jurisdiction.  The Court makes no judgment about the merits of Count II as asserted against the State of South Carolina, but because South Carolina's sovereign immunity argument is unsupportable, its motion to dismiss will be denied.  Nonetheless, the Court will, in the interests of justice as well as for the convenience of the parties and any witnesses, transfer the case to the United States

District Court for the District of South Carolina.  See 28 U.S.C. § 1404(a).  Plaintiffs' motion to amend their complaint will also be denied without prejudice.

A separate Order consistent with this Opinion will issue this same day.


/s/_____
A. RAYMOND RANDOLPH
United States Circuit Judge



/s/_____
PAUL L. FRIEDMAN
United States District Judge



/s/_____
JOHN D. BATES
United States District Judge


DATE: February 1, 2005